UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT L. HOLLEMAN, )<br>　)<br>　　　　Plaintiff, )<br>　)<br>　v. )<br>　)<br>ALANA G. BROWN *Nurse, RN, in her* )<br>*official, and individual capacity as a Nurse for* )<br>*the Pendleton Correctional Facility,* )<br>STEVEN HILL *in his official and individual* )<br>*capacity as a Lieutenant at the Pendleton* )<br>*Correctional Facility,* )<br>CORIZON HEALTH, INC., )<br>　)<br>　　　　Defendants. ) | Case No. 1:15-cv-00449-JMS-DKL |

**Entry Denying Plaintiff Holleman's and Defendant Brown and Corizon Health Inc.'s Cross Motions for Summary Judgment**

Plaintiff Robert L. Holleman is an inmate at the Indiana Department of Correction. He suffers from chronic kidney stones. In this action, he complains of the way his kidney stone pain was treated by Nurse Alana G. Brown[1] and Lt. Steven Hill on October 28, 2014. Holleman alleges that on that date he was in significant pain and urinating blood because of a passing kidney stone. He wanted to be evaluated by a medical care provider at the prison's urgent care center, but when custody staff called the medical unit, Holleman's request to be seen was denied by Nurse Brown. Holleman claims that Nurse Brown's response to his serious medical needs violated his Eighth Amendment rights.

---

[1] Previously known as Nurse Grace.

Holleman also alleges that Corizon Health, Inc., ("Corizon") is liable to him for failing to properly train defendant Nurse Brown in how to diagnose, assess and treat Holleman in a timely manner for his pain and for its custom, practice, or policy of not diagnosing or treating prisoners at Pendleton Correctional Facility who have medical emergencies.

Third, Holleman alleges that Corizon breached its contract with the State of Indiana by failing to provide adequate medical care to all offenders in the custody of the Indiana Department of Correction, including Holleman. Holleman alleges that he is a third party beneficiary to this contract and thus has the right to sue (and recover $50,000) on that basis.

Now before the Court are cross motions for summary judgment filed by Holleman, Nurse Brown and Corizon. Holleman seeks summary judgment in his favor as to his claim that Nurse Brown was deliberately indifferent to his serious medical needs. The defendants Nurse Brown and Corizon seeks summary judgment on all the claims alleged against them. Lt. Hill has not joined in this briefing and his deadline to file a dispositive motion has not passed. For the reasons explained below, the cross motions for summary judgment [dkt. 37 and 58] are **denied**.

Holleman's motion for leave to file a surreply brief [dkt. 86] is **denied.** Holleman states that a surreply is necessary because the defendants have objected to the admissibility of evidence cited in Holleman's response in opposition to the defendants' motion for summary. As explained below, the evidence of record is sufficient for Holleman to defeat the defendants' motion for summary judgment. Thus additional briefing on this issue is unnecessary.

## I. Standard of Review

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The key inquiry, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). When evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial ... against the moving party." *Celotex,* 477 U.S. at 330.

## II. Material Facts

Holleman has a history of kidney stones. During the past ten years, while incarcerated, Holleman has undergone surgery and procedures to treat his kidney stones. Given this medical history, Holleman was treated in the Chronic Care clinic every 90 days for his kidney stones and was prescribed various medications to help him pass kidney stones through urination.

On October 28, 2014, at 8:00 a.m., Holleman was an inmate at Pendleton Correctional Facility ("Pendleton"). At that time he began urinating what appeared to be blood. He was in pain when urinating. He took Tylenol, which failed to alleviate the pain. By 10:00 a.m. Holleman's pain had not subsided and he was urinating what appeared to be pure blood. He took two more Tylenol which did not stop his pain.

3

On October 28, 2014, Nurse Brown was working in the urgent care center at Pendleton from 7:00 a.m. to 3:30 p.m. Often correctional officers and counselors place calls to the urgent care center on an offender's behalf for medical care. However, correctional officers and counselors are not trained medical staff and cannot—and do not—make determinations regarding when and how offenders are seen in the medical unit. The decision of whether to treat an offender is left up to the clinical determinations of the trained nurses staffing the urgent care center and the physicians on staff.

Nurse Brown testified that the standard procedure for handling telephone calls from correctional officers about inmates in the urgent care center is to analyze the offenders' complaints and determine if the situation is emergent and requires immediate care. Nurse Brown testified that she understands that **emergent situations are life threatening situations.** Dkt. 60-1 at p. 3. If the answering nurse, after analyzing an offender's complaints, identifies an emergent situation (meaning a life threatening situation by Nurse Brown's definition), the offender is seen and evaluated immediately, either in his cell or in the urgent care unit, and the physician is notified for further orders.

If, on the other hand, the nurse triages the situation and determines that the offender is not in a life-threatening situation and does not require immediate medical attention, the offender is advised to submit a healthcare request form for future care and may be scheduled for an appointment in the clinic area once the healthcare request form is evaluated.

Nurse Brown testified that she is a registered nurse and has worked for over 29 years at Community Hospital in Anderson in the Emergency Department and Intensive Care Unit. She is experienced in assessing patients with various ailments, including kidney stones and has treated

4

thousands of patients with kidney stones. She states that the standard treatment and care for a patient passing a kidney stone is hydration and anti-inflammatory medications to permit the stone to pass. She further states that by itself, blood in the urine is not indicative of an emergent situation when patients are passing kidney stones. Dkt. 60-1. In a somewhat contradictory statement, Nurse Brown also testified that she is unable to diagnose medical conditions or to order medical treatment. She triages offenders and communicates their medical needs to the provider and then follows the provider's orders. She cannot prescribe medications.

On October 28, 2014, Nurse Brown received two phone calls at different times in the day from prison staff.  The first call was placed around 11:00 a.m. by correctional officer Saylor and the second call was placed later by counselor Danny Fountain. Based on these conversations Nurse Brown understood that the Holleman had a history of prior kidney stones and was complaining of blood in his urine. Based on this information, Nurse Brown concluded that Holleman was passing a kidney stone and that he was not dying and thus did not need emergency medical care. Nurse Brown testified that if she had been advised of symptoms and complaints of urine obstruction or blockage by the kidney stone this may have required immediate assistance. She advised the officer to tell the offender to take over the counter medications such as Advil, Aleve, or Tylenol and fill out a healthcare request form for continuing evaluation of his kidney stones. Nurse Brown's affidavit makes no reference of any report of pain and there is no indication that she inquired as to Holleman's pain level or whether he was having difficulty urinating.

On October 28, 2014, Holleman submitted a request for health care that was dated October 29, 2014. He wrote:

> **REQUEST FOR HEALTH CARE**
> State Form 45913 (R3/9-12)
> Approved by State Board of Accounts, 2012
>
> 14B HCH
>
> INDIANA DEPARTMENT OF CORRECTION
>
> PCF № 150709
>
> TO BE COMPLETED BY OFFENDER
>
> I request Health Care Services as follows:
> ☐ Sick Call ☐ Dentist ☐ Prescription Refill ☐ Mental Health ☑ Other (specify) _____
>
> Nature of Complaint: I HAVE A HISTORY OF KIDNEY STONES, PASSED MANY, PROCEDURES AND OPERATIONS TO REMOVE THEM. I AM IN SEVERE PAIN FROM A KIDNEY STONE. I HAVE BEEN URINATING WHAT LOOKS LIKE STRAIGHT BLOOD ALL MORNING. I HAD BOTH OFFICER SAYLOR AND COUNSELOR FOUNTAIN CALL YOU. TYLENOL DOES NOT WORK FOR THIS PAIN.
>
> By my signature, I hereby indicate that I understand that, in accordance with IC 11-10-3-5, I may be charged $5.00 for Health Care Services obtained at my request and $5.00 for initial (new) prescriptions. I understand that any charge for these services and/or prescriptions shall be withdrawn automatically from my Trust Fund Account. I will not receive a receipt for this withdrawal; however, I may review the balance of my Trust Account as provided by facility procedures.
>
> 14-B
>
> Signature of Offender: Robert Holleman
> Printed Name: ROBERT HOLLEMAN
> DOC Number: 10067
> Date Signed: 10-29-30

Dkt. 73-2 at p. 11. Holleman was not seen by a nurse based on this Health Care Request form until October 31, 2014. The nurse then referred him to the doctor. By the time he was seen by the nurse and doctor the stone had passed and he was no longer in pain. See dkt. 73-2 at p. 14-15.

### III. Discussion

#### A. Eighth Amendment Deliberate Indifference Claim Against Nurse Brown

Holleman asserts Eighth Amendment medical care claims against the defendants. Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on an Eighth Amendment deliberate indifference medical

6

claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). "A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

"[C]onduct is 'deliberately indifferent' when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff 'was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so.'" *Board v. Freeman*, 394 F.3d 469, 478 (7th Cir. 2005) (*quoting Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998)). "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). *See Plummer v. Wexford Health Sources, Inc.*, 609 Fed. Appx. 861, 2015 WL 4461297, *2 (7th Cir. 2015) (holding that defendant doctors were not deliberately indifferent because there was "no evidence suggesting that the defendants failed to exercise medical judgment or responded inappropriately to [the plaintiff's] ailments"). In addition, the Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

7

To the extent the defendants could be understood to argue that the pain associated with Mr. Holleman's kidney stones was not a serious medical need, this argument is insufficient to entitle them to summary judgment. A reasonable jury could conclude that Holleman was in significant pain from passing kidney stone and required treatment. It is plausible, although unlikely, that a jury could also discount Holleman's testimony and conclude that he was not in significant pain. This material fact in dispute shall be resolved by a jury.

There is also a material fact in dispute regarding whether Nurse Brown was deliberately indifferent to Holleman's pain associated with his kidney stones. A delay in treatment that causes unnecessary pain is actionable even if it did not exacerbate the injury or diminish the chances of a full recovery. *See Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012) (holding that the plaintiff stated an Eighth Amendment claim because "even though this [four-day] delay [in treatment] did not exacerbate [the plaintiff's] injury, he experienced prolonged, unnecessary pain as a result of a readily treatable condition"); *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) ("A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). The failure to provide pain relief can, in some instances, establish deliberate indifference. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.*

In this case, the defendants argue that typically, there is not much medical staff can do for a patient with kidney stones beyond recommending hydration and anti-inflammatory medications

8

to allow the kidney stone to pass in its own time. In addition, Nurse Brown could not prescribe medications and typically narcotics are not ordered for patients passing a kidney stone.

However, a reasonable jury could conclude that Nurse Brown knew Mr. Holleman was in significant pain but did nothing to treat this pain when she could have had him evaluated by a doctor. See Case Note dkt. 37-3 (reporting that Nurse Grace—now Nurse Brown—stated they have nothing to give for the pain). In support of Holleman's position is the fact that no physical evaluation was undertaken to assess his pain even though three other medical care providers including Dr. Person (who filed an affidavit in this case to support Nurse Brown) have all prescribed Holleman prescription pain medications for the similar kidney stone symptoms on other occasions. Dkt. 64 at p. 8.

In fact, Nurse Brown's conclusions were based on a report from a third party which included the observation that Holleman had blood in his urine. A jury could conclude that listening to a third party's report without any follow up is not consistent with analyzing Holleman's symptomology and that Nurse Brown should have contacted a provider with the authority to diagnose and treat medical conditions upon learning that Holleman was urinating blood and in pain. A jury could conclude that Nurse Brown's failure to act resulted in Holleman not receiving a medical evaluation until days later when his stone had passed and his pain had subsided and that Nurse Brown effectively prevented Holleman from accessing prescription pain relief from a physician. On the other hand, a jury could conclude that immediate treatment was not needed and that Nurse Brown did all she could under the circumstances.

Given these material facts in dispute the parties' cross motions for summary judgment are **denied.**

### B. Policy or Practice Claim Against Corizon

Holleman also alleges that Corizon is liable to him for failing to properly train defendant Nurse Alana G. Brown in how to diagnose, assess and treat Holleman in a timely manner for his pain and for its custom, practice or policy of not diagnosing or treating prisoners at Pendleton who have medical emergencies.

Because Corizon acts under color of state law by contracting to perform a government function, i.e. providing medical care to correctional facilities, Corizon is treated as a government entity for purposes of Section 1983 claims. *See Jackson v. Illinois Medi-Car, Inc*., 300 F.3d 760, 766 fn.6 (7th Cir. 2002). Therefore, to state a cognizable deliberate indifference claim against Corizon, Holleman must establish that he suffered a constitutional deprivation as the result of an express policy or custom of Corizon. Holleman must show that Corizon has: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a practice that is so wide-spread that, although not authorized by written or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policy making authority. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758-759 (7th Cir. 2004).

Corizon argues that it is entitled to summary judgment[2] because Holleman cannot raise any non-conclusory factual allegations to support a widespread practice to deny emergency treatment to offenders passing a kidney stone.

---

[2] Holleman does not seek summary judgment on this claim.

Unfortunately for Corizon, however, this Court believes that a jury could conclude that Nurse Brown's testimony reflects a policy or practice that violates the constitution when applied to prisoners in certain situations.

Nurse Brown testified that the standard procedure in handling telephone calls from correctional officers about inmates in the urgent care center is to analyze the offenders complaints and determine if the situation is emergent and requires immediate care. Nurse Brown testified that she understands that **emergent situations are life threatening situations.** Dkt. 60-1 at p. 3. If the answering nurse, after analyzing an offender's complaints, identifies an emergent situation (meaning a life threatening situation by Nurse Brown's definition), the offender is seen and evaluated immediately, either in his cell or in the urgent care unit, and the physician is notified for further orders. If, on the other hand, the nurse triages the situation and determines that the offender is not in a life-threatening situation and does not require immediate medical attention, the offender is advised to submit a healthcare request form for future care and may be scheduled for an appointment in the clinic area once the healthcare request form is evaluated.

To state a claim against Corizon, Holleman must introduce facts through evidence that establish a plausible inference that Corizon "'maintain[ed] a policy that sanction[ed] the maintenance of prison conditions that infring[ed] upon the constitutional rights of the prisoners.'" *Woodward v. Correctional Medical Services*, 368 F.3d 917, 927 (7th Cir. 2004). The policy just described, that inmates will only be seen on an urgent basis if they are in a life threatening situation is problematic and a jury could conclude unconstitutional.

Significant acute pain should be addressed urgently. This is not to say that the Eighth Amendment requires that all pain can be eliminated; it does not. A jury could conclude that a

11

policy or practice which forces inmates (such as Holleman) who are not suffering a life threatening emergency but are suffering severe and acute pain with observable symptoms (blood in urine) to submit a written health care request form (which is picked up only once every 24 hours) and potentially wait days to be seen by the nurse in order to be scheduled to see a doctor violates the Eighth Amendment.

Nurse Brown's testimony is sufficient to suggest that providing urgent medical care only to those facing life threatening emergencies is the policy or practice of Corizon and not a random event. In addition, a jury could conclude that Nurse Brown was not properly trained to recognize that pain should be treated as a serious medical need requiring immediate attention in certain circumstances. It is for this reason that summary judgment cannot be granted in favor of Corizon.

### C. Contract Violation Claims Against Corizon

Finally, the defendants seek summary judgment on the contract violation claim. Holleman alleges that Corizon breached its contract with the State of Indiana by failing to provide adequate medical care to all offenders in the custody of the Indiana Department of Correction, including Holleman. Holleman alleges that he is a third party beneficiary to this contract and thus has the right to sue (and recover $50,000) on that basis.

The defendants move for summary judgment on the basis that the plaintiff cannot prove his breach of contract claim because the medical defendants were not deliberately indifferent to his medical condition. For the reasons explained above, there are material questions of fact in dispute regarding whether the defendants were deliberately indifferent to Holleman's serious medical needs. Accordingly, the suggestion that because Holleman's Section 1983 claims fail, his

12

breach of contract claim fails as well must be rejected. The defendants' motion for summary judgment on this claim is **denied.**

### IV.  Conclusion

Summary judgment cannot be granted for either plaintiff Holleman or the defendants Nurse Brown or Corizon because there are material facts in dispute. These disputes shall be resolved through settlement or by a jury. The motions for summary judgment [dkts. 37 and 58] are **denied.** The motion to file a surreply [dkt. 86] is **denied as unnecessary.**

The **clerk is directed** to include a motion requesting the Court's assistance with recruiting counsel form along with Holleman's copy of this Entry. If Holleman completes this form, the Court will consider recruiting counsel to assist him with settlement discussions and trial.

**Defendant Steven Hill** shall notify the Court as soon as practicable whether he intends to file a dispositive motion in this action. The current deadline to do so is March 22, 2016.

Date: <u>March 1, 2016</u>

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

ROBERT L. HOLLEMAN
DOC # 10067
Wabash Valley Correctional Facility
Electronic Service Participant -- Court Only

13